1

The Law Office of George H. Bye
*George H. Bye, Esq.*
1901 First Avenue, First Floor
San Diego, CA 92101-2311
Phone:  (619) 233 7502
Fax.:    (619) 441 7783

Attorney for Plaintiffs,
Jeronimo Gil and Denise Gil

```
                    FILED
         CLERK, U.S. DISTRICT COURT

              JAN 1 8 2011

        CENTRAL DISTRICT OF CALIFORNIA
        BY                    DEPUTY
```

2

3

4

5

6

7

8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

Los Angeles Division

11

JERONIMO GIL and DENISE GIL,    )

CASE NUMBER  **CV11  0528  SVW PLA**

12

                    Plaintiffs,    )

COMPLAINT FOR:

13

vs.    )

14

INDYMAC BANK, F.S.B., a Federally )
Chartered Savings Bank, original lender, )
AMERICAN LAND and AIRCRAFT )
TITLE COMPANY, as original Trustee; )
MORTGAGE ELECTRONIC )
REGISTRATION SYSTEM, INC., as )
Nominee for INDYMAC BANK, F.S.B., )
(MERS); DEUTSCHE BANK )
NATIONAL TRUST COMPANY, as )
Trustee for the INDYMAC INDX )
MORTGAGE TRUST 2007-AR15, )
Mortgage Pass-through Certificates, Series )
2007-AR-15 Under the Pooling and )
Servicing Agreement Dated June 1, 2007 )
and claiming to be Successor Beneficiary; )
REGIONAL TRUSTEE SERVICES )
CORPORATION, claiming to be )
Substituted Trustee;  and DOES 1-10 )
inclusive, )

                    Defendants. )
                               )

1. VIOLATIONS OF TRUTH IN  LENDING
    STATUTES (TILA) 15 U.S.C. §1601, ET SEQ.
2. VIOLATIONS OF RESPA (12 U.S.C. §§2601-2607
3. TO SET ASIDE TRUSTEE SALE;
4. TO CANCEL TRUSTEE'S DEED;
5. TO QUIET TITLE;
6. AN ACCOUNTING.;
7.  DECLARATORY RELIEF;
8. VIOLATION OF CA CIV. CODE §2923.5(b);
9. VIOLATION OF CA B & P CODE §17500;
10. WRONGFUL FORECLOSURE;
11. BREACH OF THE IMPLIED COVENANT OF
    GOOD FAITH AND FAIR DEALING;
12. VIOLATION OF CALIFORNIA B & P CODE
    §§17200 ET SEQ;
13. SLANDER OF TITLE; and,
14.  FOR INJUNCTIVE RELIEF

JURY TRIAL DEMANDED

UNLIMITED JURISDICTION

15

16

17

18

19

20

21

22

23

24

25

26

27

Gil vs. Indymac Bank, et al, USDC Central CA

COMPLAINT

28

Plaintiffs allege:

## PARTIES

1.      Plaintiffs, Jeronimo Gil and Denise Gil, now, and at all times relevant to this complaint were, the owners of real property commonly known as 22706 Draille Drive, Torrance, County of Los Angeles, California, 90505. The legal description of the subject property is attached as Exhibit "A" and incorporated here by reference. The Assessor's Parcel Number is 7527-020-021.

2      Defendant, INDYMAC BANK, FSB, a Federally Chartered Bank, was the original lender and was the beneficiary of said loan. Plaintiffs are unaware of the present interest if any of this Defendant in the subject property, other than as set forth herein.

3.      Defendant, AMERICAN LAND and AIRCRAFT TITLE COMPANY was the original Trustee and was the Trustee for the original beneficiary at the time of filing of the Notice of Default and Election to Sell Under Deed of Trust. Said Defendant's present status as Trustee is unknown to Plaintiffs who thereby will request an order to amend this complaint when the legal status of this Defendant is determined. The loan number with INDYMAC BANK, F.S.B. is presently unknown to Plaintiffs. They will amend this complaint when the loan umber is determined as necessary.

4.      Plaintiffs do not know the true capacity or authority of Foreclosing Defendant, REGIONAL TRUSTEE SERVICE CORPORATION, to act in any capacity as Trustee. However, Defendant, REGIONAL TRUSTEE SERVICE CORPORATION, was not the Trustee at the time represented by it, that it complied with California Civil Code §2923.5(b). Therefore, Plaintiffs allege that said Defendant did not have the authority to act as Trustee and to foreclose on the described property. Defendant, REGIONAL TRUSTEE SERVICE CORPORATION, has its principal office at 616 First Avenue, Suite 500, Seattle, Washington 98401.

5.      Defendant, Mortgage Electronic Registration System, Inc., a Delaware corporation, (hereafter "MERS") was described in the original Deed of Trust as the nominee for Defendant lender INDYMAC BANK, F.S.B,, it successors and assigns, with it's principal office at P. O. Box 2926, Flint, MI, 48501. Plaintiff are informed and believe and based upon said information and belief, allege that

Gil vs. Indymac Bank, et al, USDC Central CA

COMPLAINT

-2-

1    said Mortgage Electronic Registration System is not authorized to conduct recording of documents in the

2    state of California.  Plaintiffs do not know to what extent said defendant has conducted recording

3    activities in this foreclosure.  At such time as any of such conduct is discovered, Plaintiffs will amend

4    this complaint to allege any violations found to exist.

5        6.      Plaintiffs are informed and believe that Defendant, DEUTSCHE BANK, National Trust

6    Company is and was, at all times alleged herein, a Federally Chartered Bank, with it's principal offices in

7    Germany.  Said Defendant maintains an office at 1761 E. Saint Andrews Place, Santa Ana, California,

8    92705.

9        7.      Defendant, DEUTSCHE BANK, F.S.B., was, at the times alleged herein, representing

10   itself as Trustee of the Indymac INDX Mortgage Trust 2007-AR15, Mortgage Pass-through Certificates,

11   Series 2007-AR-15 Under the Pooling and Servicing Agreement Dated June 1, 2007 and claiming to be

12   Successor Beneficiary as Grantee pursuant to a Trustee's Deed, recorded on or about April 15, 2010.

13   The exact location of the recording is unknown to Plaintiffs who will amend this complaint to allege the

14   information when it is determined.

15       8.      Plaintiffs do not know the true names, capacities, or basis for liability of Defendants sued

16   as Does 1 through 100.  Each fictitiously named Defendant is in some manner liable to Plaintiffs, or

17   claims some right, title, or interest in the subject property, or both.

18       9.      Whenever in this Complaint an act or omission of a corporation or business entity is

19   alleged , the allegation shall be deemed to mean and include an allegation that the corporation or business

20   entity acted or omitted to act through its authorized officers, directors, agents, servants and/or employees,

21   acting within the course and scope of their duties, that the act or omission was authorized by corporate

22   managerial officers or directors, and that the act or omission was ratified by the officers and directors of

23   the corporation or business entity.

24       10.     As a result of their mortgage activities, Defendants, and each of them, are and were

25   subject to and must comply with the Federal Truth in Lending Act (hereinafter "TILA") [15 U.S.C. §

26   1601-1666j]; [24 C.F.R.§ 3500.1-3500.17]; the Real Estate Settlement Procedures Act (hereinafter

27

28

---

Gil vs. Indymac Bank, et al, USDC Central CA

COMPLAINT

1   "RESPA") [12 U.S.C § 2601 et seq.] California Business and Professions Code [§17200]; California

2   Business and Professions Code [§17500]; and California Civil Code [§§ 2923.5(b), et seq], among

3   others.

**JURISDICTION**

5   11.   Jurisdiction of this case is invoked under a federal question pursuant to the federal statutes

6   outlined above and 28 U.S.C. §§1331 and 1337.

7   12.   This Court has supplemental jurisdiction over Plaintiffs state law claims pursuant to 28

8   U.S.C. § 1367.

9   13.   This Court has jurisdiction to render the judgment for declaratory relief the Plaintiffs seek

10   pursuant to 28 U.S.C. § 2201.

11   14.   Venue is proper within this district pursuant to 28 U.S.C. § 1391(b), because (1) the real

12   property exists within said district, (2) the Defendants, and each of them, has/have or is/are doing

13   business within this district, and (3) the *pendente* causes of action pursuant to California law concern real

14   property within the County of Los Angeles, State of California, within this district.

**FIRST CAUSE OF ACTION FOR VIOLATION**

**OF TRUTH IN LENDING ACT (TILA)**

(AGAINST ALL PRE-FORECLOSURE DEFENDANTS)

18   15.   Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 14

19   inclusive, as though fully set forth herein.

20   16.   The Truth in Lending Act (TILA) applies because the transaction involved the extension

21   of credit to a consumer for personal, family or household purposes that is subject to a finance charge

22   and/or payable by written agreement in more than four installments per 15 U.S.C. §§ 1601-1666j.

23   17.   Defendants violated TILA by failing to provide Plaintiffs' with accurate material

24   disclosures required under TILA and not taking into account the intent of the State Legislature in

25   approving this statute which was to fully inform home buyers of the pros and cons of adjustable rate

26   mortgages in a language (both written and spoken) that they can understand and comprehend; and advise

Gil vs. Indymac Bank, et al, USDC Central CA

COMPLAINT

-4-

them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

18.     Plaintiffs chose this loan knowing that it was a variable rate loan. What they were not told is that the interest rate was limited in range as to what it could go up or down to in any given adjustment period. This limited the Plaintiffs from making an informed decision about being obligated to this loan or shopping for another loan, more suited to their financial means. This was not specifically and clearly disclosed to the Plaintiffs.

19.     Any and all statutes of limitations relating to disclosures and notices required pursuant to 15 U.S.C. § 1601 et seq., were tolled due to Defendants' failure to effectively provide the required disclosures and notices.

20.     The variable interest rates were not adequately disclosed.

21.     As a direct and proximate result of the Defendants' violations, Plaintiffs have and will continue to have damages in an amount according to proof but not yet ascertained, including without limitation, statutory damages and all amounts paid or to be paid in connection with the loan transaction.

22.     Defendants were unjustly enriched at the expense of Plaintiffs who are therefore entitled to equitable restitution and disgorgement of profits obtained by the Defendants.

23.     Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiffs to punitive damages in an amount appropriate to punish Defendants and to deter them and others from engaging in the same behavior.

## SECOND CAUSE OF ACTION FOR VIOLATION OF REAL ESTATE

## SETTLEMENT AND PROCEDURES ACT (RESPA)

### (AGAINST ALL PRE-FORECLOSURE DEFENDANTS)

24.     Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 23 inclusive, as though fully set forth herein.

25.     RESPA applies because a lender that regularly extends federally related mortgage loans aggregating more than one million dollars ($1,000,000.00) per year, and intended for the purchase of a

Gil vs. Indymac Bank, et al, USDC Central CA

COMPLAINT

1   one-to-four family residential property is subject to RESPA per 12 U.S.C §§ 2601-2617.

2       26.    Housing and Urban Development's (HUD's) 1999 Statement of Policy established a two-

3   part test for determining the legality of lender payments to mortgage brokers for table funded transactions

4   and intermediary transactions under RESPA:

5       (1)    Whether goods or facilities were actually furnished or services were actually

6              performed for the compensation paid, and;

7       (2)    Whether the payments are reasonably related to the value of the goods or facilities

8              that were actually furnished or services that were actually performed.

9       In applying this test, HUD believes that total compensation should be scrutinized to assure that it

10  is reasonably related to the goods, facilities or services furnished or performed to determine whether it is

11  legal under RESPA.

12      27.    Neither Defendant, Indymac Bank, F.S.B., nor any other Defendant ever provided the

13  Special Information Booklet explaining the settlement costs within the three days after the consumer

14  submitted the loan application per 24 C.F.R. §3500.6.

15      28.    Furthermore, neither Defendant, Indymac Bank F.S.B., nor any other Defendant ever

16  disclosed all of their affiliated business arrangements per 24 C.F.R. §3500.15.

17      29.    As a proximate result of Defendants' actions, Plaintiffs have been damaged in an amount

18  not yet ascertained, to be proven at trial.

19          **THIRD CAUSE OF ACTION TO CANCEL TRUSTEE'S SALE**

20              (AGAINST ALL FORECLOSING DEFENDANTS)

21      30.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 29

22  inclusive, as though fully set forth herein.

23      31.    On or about April 16, 2007, for valuable consideration, Plaintiffs, as borrower, made,

24  executed, and delivered to Foreclosing Defendant Indymac Bank, F.S.B., a Note secured by Deed of

25  Trust in the amount of five hundred ninety nine thousand two hundred dollars ($599,200.00).  The

26  referenced Note is presently not available to Plaintiffs.  When obtained, it will be provided as an

27

28

1  additional Exhibit.

2       32.    To secure payment of the principal sum and interest as provided in the note and as part of

3  the same transaction, Plaintiffs, as trustors, executed and delivered to Defendant, Indymac Bank, F.S.B.,

4  a Deed of Trust executed on April 16, 2007 and recorded on April 25, 2007 in the records of the County

5  Recorder for the County of Los Angeles, by the terms of which Plaintiffs, as trustors, conveyed to

6  Defendant, AMERICAN LAND and AIRCRAFT TITLE COMPANY, as original Trustee, the real

7  property described in paragraph 1.  A copy of the Deed of Trust is attached hereto as Exhibit "B."

8       33    On December 18, 2009, Foreclosing Defendant, REGIONAL TRUSTEE SERVICES

9  CORPORATION, claiming to be Substituted Trustee in the subject matter of the Trustee sale, and on

10  behalf of Defendant, Indymac Bank, F.S.B., caused to be recorded a Notice of Default and Election to

11  Sell Under Deed of Trust. in document number 2009-1933412 supposedly in the Official Records of Los

12  Angeles County, California, alleging that a breach of the obligation secured by the Deed of Trust had

13  occurred, consisting of Plaintiffs' alleged failure to pay certain monthly installments of principal and

14  interest, and (b) Defendant, Indymac Bank F.S.B., claiming to be the beneficiary of the loan, elected to

15  sell, or cause to be sold, the trust property to satisfy that obligation.  A copy of the Notice of Default and

16  Election to Sell is attached as Exhibit "C", and incorporated here by reference.  This loan and all notices

17  were subject to California Civil Code §2923.5(b).

18       34.    Plaintiffs allege on information and belief that in or about February or March, 2009,

19  Foreclosing Defendant, Regional Trustee Services Corporation, published and posted, or caused to be

20  published and posted, at various times and in various places certain Notices of Trustee Sale with the

21  intent to sell the trust property at public auction at 10:30 a.m., on April 9, 2010, at the West Side of the

22  Los Angeles County Courthouse, directly facing Norwalk Blvd, 12720 Norwalk Blvd., in the city of

23  Norwalk, county of Los Angeles, state of California, purportedly to satisfy the obligation secured by the

24  Deed of Trust, on grounds of the alleged breach of the obligation and under the power of sale in the Deed

25  of Trust.  Plaintiffs' believes and therefore alleges that Foreclosing Defendant, Regional Trustee Services

26  Corporation, as claimed Trustee, on or about April 9, 2010, did sell the trust property, accepted valuable

27

28

Gil vs. Indymac Bank, et al, USDC Central CA
COMPLAINT

-7-

consideration from Defendant, Deutsche Bank, F.S.B., and then executed and delivered or caused to be executed and delivered, a Trustee's Deed to said Defendant, DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for the INDYMAC INDX MORTGAGE TRUST 2007-AR15, Mortgage Pass-through Certificates, Series 2007-AR-15 Under the Pooling and Servicing Agreement Dated June 1, 2007. The said Trustee's Deed Upon Sale was purportedly recorded in the Official Records of Los Angeles County, California, on April 19, 2010. A copy of the Trustee's Deed is attached hereto as Exhibit "D" and incorporated here by reference.

35.    The Trustee's Deed, executed and purportedly filed with the Office of the Los Angeles County Recorder by Foreclosing Defendant Indymac Bank, F.S.B. (now known as OneWest Bank, F.S.B. by reason of a bank takeover), was wrongfully executed, delivered, and recorded. Plaintiffs contend that Defendant, Indymac Bank, F.S.B., executed invalid presale procedures and improper sales procedures in violation of the terms and conditions of the Promissory Note and Deed of Trust.

36.    As a proximate result of the wrongful foreclosure in violation of the duties and obligations of the herein alleged successor Trustee, foreclosing Defendant Regional Trustee Services Corporation, and Defendant beneficiary, Indymac Bank, F.S.B., Plaintiffs have suffered loss and damage in that Plaintiffs have been wrongfully deprived of the beneficial use and enjoyment of the real property and have been deprived of legal title by forfeiture.

37.    Possession of the premises by the purported buyer at foreclosure sale, April 9, 2010, was postponed due to the filing of a Chapter 7 case in the U. S. Bankruptcy Court, Central District of California by the Plaintiff, Jeronimo Gil. Said Defendant obtained relief from the automatic stay in the bankruptcy case. An unlawful Detainer complaint was filed and prosecuted by Defendant Deutsche Bank, between April 9, 2010 and September 30, 2010.

38.    The Foreclosing Defendants never had the legal authority to foreclose, i.e., the authority to exercise the power of sale as an assignee of the Note and Deed of Trust, because the Foreclosing Defendants interest was never acknowledged and recorded in violation of Civil Code §2932.5, resulting in the non-judicial foreclosure sale being void *ab initio*.

Gil vs. Indymac Bank, et al, USDC Central CA

COMPLAINT

-8-

39.     Moreover, the Foreclosing Defendant, Regional Trustee Services Corporation, never had the legal authority to foreclose because the instrument (Deed of Trust), which permitted foreclosure if the borrower was in default, was improperly assigned and/or was never transferred to the Foreclosing Defendant, Regional Trustee Services Corporation from the original lender. Therefore, the Deed of Trust could not provide a basis for a foreclosure, and the non-judicial foreclosure is void *ab initio*.

40.     Accordingly, Plaintiffs hereby request an order of this Court that the Trustee's Sale was irregular in that it was legally void and conducted without any right or privilege by the Foreclosing Defendants.

41.     Plaintiffs' offers to tender to the true and correct beneficiary or Trustee, all amounts due and owing so that the claimed default may be cured and Plaintiffs may be reinstated to all former rights and privileges under the Promissory Note and Deed of Trust. Plaintiffs are ready, willing, and able to tender those sums, if any, that the Court finds due and owing on rendering the accounting requested in the Sixth Cause of Action of this complaint.

### FOURTH CAUSE OF ACTION TO CANCEL TRUSTEE'S DEED

### (AGAINST ALL FORECLOSING DEFENDANTS)

42.     Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 43 inclusive, as though fully set forth herein.

43.     Defendant, DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for the INDYMAC INDX MORTGAGE TRUST 2007-AR15, Mortgage Pass-through Certificates, Series 2007-AR-15 under the Pooling and Servicing Agreement Dated June 1, 2007, claims an estate or interest in the real property described in paragraph 1 adverse to that of Plaintiffs, but said Defendant's claims are without any right. Said Defendant has no estate, right, title, or interest in the real property.

44.     The claims of Defendant, DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for the INDYMAC INDX MORTGAGE TRUST 2007-AR15, Mortgage Pass-through Certificates, Series 2007-AR-15 under the Pooling and Servicing Agreement Dated June 1, 2007, are based on the Trustee's Deed, (Exhibit "D") purporting to have been executed by Foreclosing Defendant

Regional Trustee Services Corporation, and delivered to Defendant, DEUTSCHE BANK NATIONAL

TRUST COMPANY, as Trustee for the INDYMAC INDX MORTGAGE TRUST 2007-AR15,

Mortgage Pass-through Certificates, Series 2007-AR-15 under the Pooling and Servicing Agreement

Dated June 1, 2007, on or after April 9, 2010, and purporting to convey the property to Defendant

DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for the INDYMAC INDX

MORTGAGE TRUST 2007-AR15, Mortgage Pass-through Certificates, Series 2007-AR-15 under the

Pooling and Servicing Agreement Dated June 1, 2007

45.    Although the Trustee's Deed appears valid on its face, it is invalid, void, and of no force

or effect regarding Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for the

INDYMAC INDX MORTGAGE TRUST 2007-AR15, Mortgage Pass-through Certificates, Series 2007-

AR-15 Under the Pooling and Servicing Agreement Dated June 1, 2007's interests in the real property

described in paragraph 1, for the reasons set forth in the First and Second Causes of Action herein, and

pursuant to California Civil Code §2934a.

46.    The estate and interest in the described real property claimed by Defendant, DEUTSCHE

BANK NATIONAL TRUST COMPANY, as Trustee for the INDYMAC INDX MORTGAGE TRUST

2007-AR15, Mortgage Pass-through Certificates, Series 2007-AR-15 under the Pooling and Servicing

Agreement Dated June 1, 2007, based on the Trustee's Deed, is a cloud on Plaintiff's title in and to the

real property, tends to depreciate its market value, restricts Plaintiff's full use and enjoyment of the real

property, and hinders Plaintiff's right to unrestricted alienation of it.  If the Trustee's Deed is not

delivered and canceled, there is a reasonable fear that Plaintiffs will suffer serious injury and irreparable

harm.

## FIFTH CAUSE OF ACTION TO QUIET TITLE

### (AGAINST ALL DEFENDANTS)

47.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 46

inclusive, as though fully set forth herein.

48.    Plaintiffs seek to quiet title against the claims of all Defendants.

Gil vs. Indymac Bank, et al, USDC Central CA

COMPLAINT

49.     Said named Defendants claims are without any right, and said Defendants have no right, title, estate, lien, or interest in the property described in paragraph 1.

50.     Defendants named as Defendants DOES 1 through 100 in this complaint are all persons unknown claiming (a) any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiffs' title, or (b) any cloud on Plaintiffs' title to the property. The claims of each unknown Defendant are without any right, and these Defendants have no right, title, estate, lien, or interest in the property described in paragraph 1.

51.     Plaintiffs desire and are entitled to a judicial declaration quieting title in Plaintiffs as of April 15, 2010 and restoring possession to Plaintiffs.

## SIXTH CAUSE OF ACTION FOR ACCOUNTING

### (AGAINST ALL DEFENDANTS)

52.     Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 56 inclusive, as though fully set forth herein.

53.     Any amount of money still owed to Defendants named herein, if any there is, is unknown to Plaintiffs and cannot be determined without an accounting.  Plaintiffs therefore requests an order of this court for an accounting of all amounts paid and claimed by the named Defendants.

## SEVENTH CAUSE OF ACTION FOR DECLARATORY RELIEF

### (AGAINST ALL DEFENDANTS)

54.     Plaintiffs re allege and incorporate by reference the allegations in paragraphs 1 through 53 inclusive, as though fully set forth herein.

55.     Plaintiffs allege that a genuine dispute has arisen between them and the named Defendants.  Plaintiffs believe and allege that a court determination is necessary to resolve the disputes regarding the loan, and default, the entry of default, any violations of the laws of the State of California and the rights and liabilities of all of the parties involved in the matters alleged in this complaint.

/ / /

/ / /

Gil vs. Indymac Bank, et al, USDC Central CA

**EIGHTH CAUSE OF ACTION FOR VIOLATION OF**

**CALIFORNIA CIVIL CODE §2923.5(b))**

(AGAINST ALL FORECLOSING DEFENDANTS)

56.     Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 55 inclusive, as though fully set forth herein.

57.     California Civil Code §2923.5(b) states "A notice of default filed pursuant to Section 2924 shall include a declaration from the mortgagee, beneficiary, or authorized agent that it has contacted the borrower, tried with due diligence to contact the borrower as required by this section, or the borrower has surrendered the property to the mortgagee, trustee, beneficiary, or authorized agent."

58.     Page 1 of the Deed Of Trust discloses that Defendant AMERICAN LAND and AIRCRAFT TITLE COMPANY was the original Trustee and remained the Trustee until March 19, 2010 when a Substitution of Trustee was recorded, (Exhibit "E") at which time Defendant, REGIONAL TRUSTEE SERVICE CORPORATION, became the substituted Trustee.  On December 18, 2009, Foreclosing Defendant, REGIONAL TRUSTEE SERVICES CORPORATION, had executed and filed the Notice of Default and Election to Sell Under Deed of Trust, making reference to a Due Diligence Declaration, declaring that "the mortgagee or designated agent contacted the borrower, tried with due diligence to contact the borrower."  A copy of the filed Notice of Default and Election to Sell Under Deed of Trust is attached hereto as Exhibit "C" and incorporated herein by this reference.

59.     Pursuant to Civil Code 2923.5(a)(1) the lender may not file a Notice Of Default until 30 days after the lender has contacted the borrower or tried with due diligence to contact the borrower.  Since AMERICAN LAND and AIRCRAFT TITLE COMPANY was still the Trustee 30 days before filing the Notice Of Default, Foreclosing Defendant, REGIONAL TRUSTEE SERVICES CORPORATION was without the authority to execute the declaration and/or to make the contact with the Plaintiffs.  (See *Terry Mabre vs. Aurora Loan Services* 10/13/09, Order To Show Cause for Preliminary Injunction and Temporary Restraining attached hereto)

/ / /

Gil vs. Indymac Bank, et al, USDC Central CA

COMPLAINT

-12-

## NINTH CAUSE OF ACTION FOR VIOLATION OF

## CALIFORNIA BUSINESS AND PROFESSIONS CODE §17500

### (AGAINST ALL FORECLOSING DEFENDANTS)

60.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 59 inclusive, as though fully set forth herein.

61.    Plaintiffs further allege that the security instruments, i.e., the Deed Of Trust and Note must be delivered to and in possession of the foreclosing trustee, in this case, REGIONAL TRUSTEE SERVICES CORPORATION, when foreclosing procedures are commenced.  The last paragraph on page 2 of the Notice Of Default (Exhibit "C") states that "the present beneficiary under such Deed of Trust has executed and delivered to said Trustee, a written Declaration and demand for Sale, and has deposited with said Trustee, such Deed of Trust and all documents evidencing obligations secured thereby."  The document which affects the official notice of the transfer of the security instruments from one Trustee to the other is the Substitution Of Trustee.  Since the Substitution Of Trustee was not recorded until 92 days after the Notice Of Default, Plaintiffs allege that it is unlikely that Regional Trustee Services Corporation was in possession of the security instruments at the time the Notice of Default was recorded.

62    The referenced paragraph fails to meet the requirement of the referenced Business and Professions Code section in that (1) it is not a Declaration under penalty of Perjury and (2) it is not made by any person who actually contacted or attempted to contact the Plaintiffs.  Therefore, it is hearsay and inadmissible to prove the truth of its contents.

### TENTH CAUSE OF ACTION FOR WRONGFUL FORECLOSURE

### (AGAINST ALL FORECLOSING DEFENDANTS)

63.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 62 inclusive, as though fully set forth herein.

64.    Plaintiffs are informed and believe and thereon allege that after the origination and funding of their loan, it was sold to investors as a "mortgage backed security" and that none of the Foreclosing Defendants in this action owned this loan, or the corresponding note.  Moreover, none of the

Gil vs. Indymac Bank, et al, USDC Central CA

COMPLAINT

-13-

Foreclosing Defendants in this action were lawfully appointed as trustee or had the original note assigned to them. Accordingly, none of the Foreclosing Defendants in this action had the right to declare a default, cause notices of default to be issued or recorded, or to foreclose on Plaintiffs' interest in the Subject Property. The Foreclosing Defendants were not the note holder or a beneficiary at any time with regard to Plaintiffs' loan.

65.    Plaintiffs further allege on information and belief that none of the Foreclosing Defendants in this action are beneficiaries or representatives of the beneficiary and, if the Foreclosing Defendants allege otherwise, they do not have the original note to prove that they are in fact the party authorized to conduct the foreclosure.

66.    Plaintiffs further allege on information and belief that the loan was sold or transferred without notifying the Plaintiffs in writing. Therefore, the loan is void of legal rights to enforce it.

67.    Additionally, the Foreclosing Defendants violated California Civil Code §2923.5(a), which requires a "mortgagee, beneficiary or authorized agent" to "contact the borrower or person by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. "Section 2923.5(b) requires a default notice to include a declaration "from the mortgagee, beneficiary, or authorized agent" of compliance with Civil Code §2923.5, including an attempt "with due diligence to contact the borrower as required by this section."

68.    None of the Foreclosing Defendants contacted Plaintiffs to discuss their financial situation. Moreover, none of the Foreclosing Defendants explored options with Plaintiffs to avoid foreclosure. Additionally, none of the Foreclosing Defendants informed Plaintiffs of the right to have a meeting within 14 days of said contact. Accordingly, the Foreclosing Defendants did not fulfill their legal obligation to Plaintiffs.

69    Thus, the Foreclosing Defendants engaged in a fraudulent foreclosure of the Subject Property in that the Foreclosing Defendants did not have the legal authority to foreclose on the Subject Property and, alternatively, if they had the legal authority, they failed to comply with Civil Code §§2923.5 and 2923.6.

Gil vs. Indymac Bank, et al, USDC Central CA

COMPLAINT

-14-

70.   As a result of the above alleged wrongs, Plaintiffs have suffered general and special damages in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION FOR BREACH OF THE IMPLIED
## COVENANT OF GOOD FAITH AND FAIR DEALING
### (AGAINST THE FORECLOSING DEFENDANTS)

71.   Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 75 inclusive, as though fully set forth herein.

72.   Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.  This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement.  The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose.  This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

73.   Alternatively, if the Note and Deed of Trust was validly and properly assigned to the Foreclosing Defendants, the Foreclosing Defendants did not act in good faith and did not deal fairly with Plaintiffs in connection with the note and deed of trust when they failed to properly comply with California Civil Code §§ 2923.5 and 2923.6.  The failure of the Foreclosing Defendants to follow these procedures prejudiced the rights of the Plaintiffs to seek help to cure any alleged deficiency in the payments, to seek any modification of the terms of the loan if appropriate or to seek and obtain any alternative financing to prevent the foreclosure of their home or any other losses.

74.   The Foreclosing Defendants enjoyed substantial discretionary power affecting the rights of Plaintiffs during the events alleged in this Complaint.  They were required to exercise such power in good faith.

75.   The Foreclosing Defendants engaged in such conduct to drive Plaintiffs into foreclosure so that they could acquire the Subject Property therefore obtaining relief from funds available through

1    alternative programs and selling the property at auction, further gaining windfall profits at the Plaintiffs'

2    expense. These actions were a bad faith breach of the contract between Plaintiffs and the Foreclosing

3    Defendants which show that the Foreclosing Defendants had no intention of performing the contract,

4    consisting of the original Note and Deed of Trust, in good faith.

5         76.     As a result of the Foreclosing Defendants' breaches of this covenant, Plaintiffs have

6    suffered general and special damages in an amount to be determined at trial.

### TWELFTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA

### BUSINESS AND PROFESSIONS CODE SECTIONS 17200 ET SEQ.

(AGAINST THE FORECLOSING DEFENDANTS)

10         77.     Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 76

11    inclusive, as though fully set forth herein.

12         78.     California Business & Professions Code Section 17200, et seq., prohibits acts of unfair

13    competition, which means and includes any "fraudulent business act or practice . . ." and conduct which

14    is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

15         79.     As more fully described above, the Foreclosing Defendants' acts and practices are likely

16    to deceive, constituting a fraudulent business act or practice. This conduct is ongoing and continues to

17    this date.

18         80.     Specifically, the Foreclosing Defendants engage in deceptive business practices with

19    respect to mortgage loan servicing, assignments of notes and deeds of trust, foreclosure of residential

20    properties and related matters by:

21             (a) Assessing improper or excessive late fees;

22             (b) Improperly characterizing customers' accounts as being in default or delinquent status

23    to generate unwarranted fees;

24             (c) Instituting improper or premature foreclosure proceedings to generate unwarranted

25    fees;

26             (d) Misapplying or failing to apply customer payments;

27

Gil vs. Indymac Bank, et al, USDC Central CA

28                                 COMPLAINT

(e)  Failing to provide adequate monthly statement information to customers regarding the status of their accounts, payments owed, and/or basis for fees assessed;

(f)  Seeking to collect, and collecting, various improper fees, costs and charges, that are either not legally due under the mortgage contract or California law, or that are in excess of amounts legally due;

(g)  Mishandling borrowers' mortgage payments and failing to timely or properly credit payments received, resulting in late charges, delinquencies or default;

(h)  Treating borrowers as in default on their loans even though the borrowers have tendered timely and sufficient payments or have otherwise complied with mortgage requirements or California law;

(i)  Failing to disclose the fees, costs and charges allowable under the mortgage contract;

(j)  Ignoring grace periods;

(k)  Executing and recording false and misleading documents; and

(l)  Acting as beneficiaries and trustees without the legal authority to do so.

81.   The Foreclosing Defendants fail to act in good faith as they take fees for services but do not render them competently and in compliance with applicable law.

82.   Moreover, the Foreclosing Defendants engage in a uniform pattern and practice of unfair and overly-aggressive servicing that results in the assessment of unwarranted and unfair fees against California consumers, and premature default often resulting in unfair and illegal foreclosure proceedings. The scheme implemented by the Foreclosing Defendants is designed to defraud California consumers and enrich the Foreclosing Defendants.

83.   The foregoing acts and practices has caused substantial harm to California consumers.

84.   As a direct and proximate result of the unlawful, unfair and fraudulent acts and practices of the Foreclosing Defendants, Plaintiffs and California consumers have suffered and will continue to suffer damages in the form of unfair and unwarranted late fees and other improper fees and charges.

85.   By reason of the foregoing, the Foreclosing Defendants have been unjustly enriched and

Gil vs. Indymac Bank, et al, USDC Central CA

COMPLAINT

-17-

1  should be required to disgorge their illicit profits and/or make restitution to Plaintiffs and other California

2  consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to

3  California Business & Professions Code §§17203 and 17204. Additionally, Plaintiffs are therefore

4  entitled to injunctive relief and attorney's fees as available under California Business and Professions

5  Code §17200 and related sections.

6  ### THIRTEENTH CAUSE OF ACTION FOR SLANDER OF TITLE

7  ### (AGAINST THE FORECLOSING DEFENDANTS)

8      86.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 85

9  inclusive, as though fully set forth herein.

10      87.    Pursuant to, among others, California Civil Code section 2924(a)(1)(C), only the

11  beneficiary of a Deed of Trust or a beneficiary's assignee or the agent of a beneficiary or its assignee may

12  cause to be recorded against real property either a Notice of Default or a Notice of Trustee's Sale.

13      88.    Furthermore, only the Trustee of record may initiate foreclosure proceedings against the

14  Trustor.  Among the duties of the Trustee is the initiation of contact with the Trustor not less than thirty

15  (30) days prior to the filing of a Notice of Default, for the purpose of advising the Trustor regarding his

16  or her rights pursuant to California Civil Code §§ 2923.5 and 2924(a) et seq.

17      89.    Regional Trustee Services Corporation, purportedly but falsely acting as either the trustee

18  or the agent of the beneficiary of the Deed of Trust or the agent of Defendant, Indymac Bank, F.S.B.,

19  intentionally or wrongfully and without privilege, by executing and recording the Notice of Default,

20  including a paragraph in the form of a "declaration" allegedly for the purpose of proceeding with the

21  foreclosure of the Plaintiffs' property, stating that the Plaintiffs had been contacted by someone, to

22  comply with California Civil Code §2923.5(a)(1).  This false information led to the continuation of

23  foreclosure proceedings following the filing of the Notice of Default against the Subject Property.

24      90.    Defendant, DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for the

25  INDYMAC INDX MORTGAGE TRUST 2007-AR15, Mortgage Pass-through Certificates, Series 2007-

26  AR-15 under the Pooling and Servicing Agreement Dated June 1, 2007 and claiming to be Successor

27

Gil vs. Indymac Bank, et al, USDC Central CA

28

1  Beneficiary, has wrongfully and without privilege, published matters or caused matters to be published

2  that they are the current owners of the Subject Property which is untrue and disparaging to Plaintiffs'

3  interest in the Subject Property.

4       91.     By doing the acts described above, the said Foreclosing Defendants have slandered

5  Plaintiffs' title to the Subject Property in that the conduct and acts of the Foreclosing Defendants

6  violated, among others, California Civil Code §2924(a)(1)(C). Such conduct and acts were not

7  privileged.

8       92.     The conduct of the Foreclosing Defendants caused Plaintiffs to suffer general and special

9  damages in an amount to be proven at trial.

10  **FOURTEENTH CAUSE OF ACTION FOR INJUNCTIVE RELIEF**

11  (AGAINST ALL FORECLOSING DEFENDANTS)

12       93.     Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 92

13  inclusive, as though fully set forth herein.

14       94.     Plaintiffs are informed, believe and thereon allege beginning on or about April 9, 2010,

15  and continuing to the present, Foreclosing Defendants and other defendants wrongfully and unlawfully

16  asserted an interest in the subject property.

17       95.     Plaintiffs are informed, believe and thereon allege that the Foreclosing Defendants

18  unlawfully converted the property which was unconditionally sold to Plaintiffs and of which they own all

19  right, title and interest. Plaintiffs are further informed, believe and thereon allege that they are the

20  rightful holder of sole possession and interest in the Subject Property.

21       96.     Plaintiffs are informed, believe and thereon allege that, until the rights and obligations of

22  the parties are determined in this case, Foreclosing Defendants will possess the ability to act to the

23  detriment of Plaintiffs' property rights and adverse to their ownership of the property which may be

24  subject to other transactions, government or other liens, or other encumbrances, or may be sold, all

25  resulting in irreparable harm to Plaintiffs and it will be impossible to determine the exact amount of such

26  damage to them if Foreclosing Defendant's conduct is not enjoined and restrained by this court to

27  Gil vs. Indymac Bank, et al, USDC Central CA

28  COMPLAINT

1  maintain the status quo with regard to the Subject Property and other assets until this case is concluded.

2      97.    Plaintiffs have no adequate remedy at law for the injuries currently being suffered or those

3  which will continue to be suffered in the future, in that Foreclosing Defendants have, and continue to

4  convert the property, its use, re-lease, or sell the Subject Property.

5      98.    Plaintiffs are informed, believe and thereon allege that irreparable harm has occurred and

6  will continue to occur to their property rights if an injunction is not granted to protect their assets and

7  rights pending the outcome of this litigation.  They request therefore that Foreclosing Defendants be

8  enjoined from collecting rents or other income of the property, attempting to obtain possession of the

9  premises, and that Foreclosing Defendants restore possession of the Subject Property to them pending the

10  outcome of this litigation..

11  WHEREFORE, Plaintiffs demand judgment as follows:

12      1.    That this Honorable Court find that the Defendants acting prior to the foreclosure of the

13  described real property violated Truth in Lending Statutes (TILA) in the lending process described;

14      2.    That the Defendants acting prior to the foreclosure of the described real property violated

15  the Real Estate Settlement and Procedures Act (RESPA);

16      3.    That the Court issue (a) a declaration that the sale of the trust property is null and void and

17  of no force or effect, and (b) an order setting aside the Trustee sale of the real property;

18      4.    That the Court (a) issue an order that Foreclosing Defendants and/or the Defendant

19  presently claiming ownership in the described real property, DEUTSCHE BANK NATIONAL TRUST

20  COMPANY, as Trustee for the INDYMAC INDX MORTGAGE TRUST 2007-AR15, Mortgage Pass-

21  through Certificates, Series 2007-AR-15 Under the Pooling and Servicing Agreement Dated June 1, 2007

22  and claiming to be Successor Beneficiary, deliver the Trustee's Deed to the Court, and (b) cancel the

23  Trustee's Deed;

24      5.    That the Court order judgment quieting title in Plaintiffs, Jeronimo Gil and Denise Gil as

25  owners of the real property described in paragraph 1, declaring that Defendant, DEUTSCHE BANK

26  NATIONAL TRUST COMPANY, as Trustee for the INDYMAC INDX MORTGAGE TRUST

27

28                              COMPLAINT

2007-AR15, Mortgage Pass-through Certificates, Series 2007-AR-15 Und Under the Pooling and

Servicing Agreement Dated June 1, 2007 and claiming to be Successor Beneficiary has no right, title,

estate, lien, or interest in the property adverse to Plaintiffs's and ordering that Plaintiffs be restored to

possession of the real property;

6.      That the Court render between Plaintiffs, Jeronimo Gil and Denise Gil, and all Defendants

an accounting to determine the amount, if any, is actually owed to any Defendant by Plaintiffs;

7.      That the Court award damages for the unlawful detention of the premises at the rate of

$2,000.00 per month for a time to be determined at trial if appropriate;

8.      That the Court, upon trial, make a determination of the rights and liabilities of the

Plaintiffs and as to each of the named Defendants in this suit;

9.      That the Court find that the Foreclosing Defendants, and each of them, are in violation of

California Civil Code §§2923.5(b) and 2923.52(a);

10.     That the Court issue a Temporary Injunction and set a hearing for a Preliminary and

Permanent Injunction against all Defendants named herein, who claim to have or have had an

interest in the property belonging to the Plaintiffs as described in this complaint; and,

11.     That Plaintiffs recover all attorney fees and costs as appropriate in this action, and that the

Court award any other appropriate relief.

Date: December 25, 2010

George H. Dye, Esq.
Attorney for Plaintiffs

Gil vs. Indymac Bank, et al, USDC Central CA

COMPLAINT

## VERIFICATION

**STATE OF CALIFORNIA**          )
                                 ) ss:
**COUNTY OF LOS ANGELES**        )

I am one of the Plaintiffs in the above-entitled action; I have read the foregoing:

### COMPLAINT

and know the contents thereof; and,

I certify that the same is true of my own knowledge, except as to those matters which are therein stated upon my information or belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California AND THE United States of America, that the foregoing is true and correct.

Executed this 13th day of January, 2011, at Los Angeles, California.

JERONIMO GIL, PLAINTIFF

# Exhibit "A"

LOT 110 OF TRACT NO. 17966, IN THE CITY OF TORRANCE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 447 PAGES 19, 20 AND 21 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS AND HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 600 FEET AS GRANTED TO ARCADIA INVESTMENT COMPANY BY DEED RECORDED IN BOOK 32472 PAGE 286, OFFICIAL RECORDS.

"BY A DEED DATED SEPTEMBER 25, 1962, AND RECORDED SEPTEMBER 28, 1962, IN BOOK 39959 PAGE 388, OFFICIAL RECORDS, ARCADIA INVESTMENT COMPANY QUITCLAIMED "ALL ITS RIGHTS IN AND TO SAID TRACT 17966, EXCEPT ALL OIL, GAS AND HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 600 FEET, WITHOUT THE RIGHT OF ENTRY UPON THE SURFACE OF SAID LAND"; WHICH DEED RECITES "THIS DEED IS EXECUTED FOR THE PURPOSE OF QUITCLAIMING AND RELEASING ALL SURFACE RIGHTS TO THE PROPERTY DESCRIBED HEREIN

# Exhibit "B"

Recording Requested By:
INDYMAC BANK, F.S.B.,
MANAGEMENT
*[Company Name]*

And When Recorded Mail To:
INDYMAC BANK, F.S.B.,
MANAGEMENT
*[Company Name]*

*[Name of Natural Person]*
BLDG B, 901 E 104TH ST,
STE 400/500
*[Street Address]*
KANSAS CITY, MO 64131
*[City, State  Zip Code]*

04/25/07

**20070995842**

*[Space Above This Line For Recording Data]*

# DEED OF TRUST

**MIN:  100055401260767316**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)**   **"Security Instrument"** means this document, which is dated   April 16, 2007
together with all Riders to this document

**(B)**   **"Borrower"** is   JERONIMO GIL AND DENISE GIL HUSBAND AND WIFE AS JOINT TENANTS

Borrower is the trustor under this Security Instrument.

**(C)**   **"Lender"** is   INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

Lender is a   Federal Savings Bank   organized and existing under the laws of United States of America   . Lender's address is   155 NORTH LAKE AVENUE, PASADENA, CA 91101

**(D)**   **"Trustee"** is   AMERICAN LAND AND AIRCRAFT TITLE COMPANY

**(E)**   **"MERS"** is Mortgage Electronic Registration Systems, Inc  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns  **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Loan No: 126076731

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

MERS Modified Form 3005 01/01
14301CA 08/00
© 2000, The Compliance Source, Inc

Page 1 of 13

(F) "Note" means the promiss ... signed by Borrower and dated Ap 2007 The Note states that Borrower owes Lender five hundred ninety nine thousan two hundred and NO/100ths Dollars (U.S $ 599,200.00 ) plus interest Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 1, 2037 .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property "

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower The following Riders are to be executed by Borrower [check box as applicable]

[x] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider
[ ] Balloon Rider    [ ] Planned Unit Development Rider    [ ] Biweekly Payment Rider
[ ] 1-4 Family Rider    [ ] Revocable Trust Rider
[ ] Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

(M) "Escrow Items" means those items that are described in Section 3

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

Loan No: 126076731

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the     County       of   LOS ANGELES

                                                     *[Type of Recording Jurisdiction]*             *[Name of Recording Jurisdiction]*

SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF

Assessor's Identification Number      7527020021

which currently has the address of                       22706 DRAILLE DRIVE
                                                 *[Street]*

         TORRANCE              , California         90505             ("Property Address").
         *[City]*                                  *[Zip Code]*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

     1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

     Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any

Loan No: 126076731

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3005 01/01
—The Compliance Source, Inc.—                           Page 3 of 13                                14301CA 08/00
       www.compliancesource.com                                                    © 2000, The Compliance Source, Inc.

payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

Loan No: 126076731

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—             Page 4 of 13                        14301CA 08/00
       www.compliancesource.com                                                 © 2000, The Compliance Source, Inc



07 0965842

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,

Loan No: 126076731

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—      Page 5 of 13      14301CA 08/00
www.compliancesource.com      © 2000, The Compliance Source, Inc



whether or not the underlying insurer required by Lender, shall be applied to the restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.   Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

**7.   Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

**8.   Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

**9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or

Loan No: 126076731

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                Page 6 of 13                        14301CA 08/00
www.compliancesource.com                                                © 2000, The Compliance Source, Inc

obligation to do so It is agreed t . . . r incurs no liability for not taking any ! . . ons authorized under this Section 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums)

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such

Loan No: 126076731

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT         MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—        Page 7 of 13        14301CA 08/00
www.compliancesource.com        © 2000, The Compliance Source, Inc

Miscellaneous Proceeds, Lender shall be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction. (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that,`in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"). (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

Loan No: 126076731

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—   Page 8 of 13
www.compliancesource.com

MERS Modified Form 3005 01/01
14301CA 08/00
© 2000, The Compliance Source, Inc

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this

Loan No: 126076731



Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender. (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action If Applicable Law provides a time period, which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS** Borrower and Lender further covenant and agree as follows:

Loan No: 126076731

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—    Page 10 of 13    14301CA 08/00
www.compliancesource.com    © 2000, The Compliance Source, Inc

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California

Loan No: 126076731

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                              Page 11 of 13
www.compliancesource com

MERS Modified Form 3005 01/01
14301CA 00/00
© 2000, The Compliance Source, Inc

BY SIGNING BELOW, _____ accepts and agrees to the terms and _____ contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Witnesses.

JERONIMO GIL                                    (Seal)
                                                -Borrower
                                                [Printed Name]


DENISE GIL                                      (Seal)
                                                -Borrower
                                                [Printed Name]


                                                (Seal)
                                                -Borrower
                                                [Printed Name]


                                                (Seal)
                                                -Borrower
                                                [Printed Name]


[Acknowledgment on Following Page]


Loan No: 126076731

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                    Page 12 of 13
www.compliancesource.com

MERS Modified Form 3005 01/01
14301CA 08/00
© 2000, The Compliance Source, Inc

State of *California*

County of *Los Angeles*

On *April 17, 2007*, before me, *M. Flanagan, Notary Public*   *[name and title of officer]*
personally appeared   JERONIMO GIL and DENISE GIL

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument in person(s), or the entity upon behalf of which the person(s) acted, executed the instrument
WITNESS my hand and official seal

Signature   *M. Flanagan*            (Seal)



M. FLANAGAN
Commission # 1549724
Notary Public - California
Los Angeles County
My Comm. Expires Feb 3, 2009

M. FLANAGAN
Commission # 1549724
Notary Public - California
Los Angeles County
My Comm. Expires Feb 3, 2009

## REQUEST FOR FULL RECONVEYANCE

TO TRUSTEE:
The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of _____ County, State of California, in book _____, page _____ of official records Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Date _____

(Trustee) _____

Loan No: 126076731
California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                   Page 13 of 13                          1430ICA 00/00
www.compliancesource.com                                                                      © 2000, The Compliance Source, Inc

ORDER NO  RR710735

# EXHIBIT "A"

LOT 110 OF TRACT NO. 17965, IN THE CITY OF TORRANCE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 447 PAGES 19, 20 AND 21 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS AND HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET AS GRANTED TO ARCADIA INVESTMENT COMPANY BY DEED RECORDED IN BOOK 38472 PAGE 290, OFFICIAL RECORDS.

"BY A DEED DATED SEPTEMBER 25, 1952, AND RECORDED SEPTEMBER 29, 1952, IN BOOK 39950 PAGE 369, OFFICIAL RECORDS, ARCADIA INVESTMENT COMPANY QUITCLAIMED "ALL ITS RIGHTS IN AND TO SAID TRACT 17965, EXCEPT ALL OIL, GAS AND HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF ENTRY UPON THE SURFACE OF SAID LAND"; WHICH DEED RECITES "THIS DEED IS EXECUTED FOR THE PURPOSE OF QUITCLAIMING AND RELEASING ALL SURFACE RIGHTS TO THE PROPERTY DESCRIBED HEREIN

07 0995842

**FIXED/ADJUSTABLE RATE RIDER**
**INTEREST ONLY FIXED PERIOD**
**(LIBOR 1 Year Index (As Published In The Wall Street Journal)- Rate Caps)**

Loan #    126076731                          - MIN:    100055401260767316

THIS FIXED/ADJUSTABLE RATE RIDER is made this 16th  day of April,   2007     ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

("Lender") of the same date and covering the property described in the Security Instrument
and located at:

22706 DRAILLE DRIVE, TORRANCE, CA 90505

[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of         6.250   %. The Note also
provides for a change in the initial fixed rate to an adjustable interest rate, as follows:
**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the
first day of May,   2017      , and the adjustable interest rate I will pay may change
on that day every 12th  month thereafter. The date on which my initial fixed interest rate
changes to an adjustable interest rate, and each date on which my adjustable interest rate
could change, is called a "Change Date."
**(B) The Index**
Beginning with the first Interest Change Date, my interest rate will be based on an Index.
The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of
interbank offered rates for one-year U.S. dollar-denominated deposits in the London market,
as published in The Wall Street Journal. The most recent Index figure available as of the date
45 days before each Interest Change Date is called the "Current Index."

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER - 1 Year LIBOR - Single Family**
**(Fixed and Interest Only Periods are the same)**
                                        Page 1 of 4                        Form 5603
8480833 (0506)        VMP Mortgage Solutions, Inc. (800)521-7291              6/05

07 0995842

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding two and 750/1000ths percentage points ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.250 % or less than 2.750 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment due after the first Change Date.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within

Loan No: 126076731                                                    Form 5603
8480833 (0506)                    Page 3 of 4                          6/05

which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
JERONIMO GIL          -Borrower

_____ (Seal)
DENISE GIL            -Borrower

_____ (Seal)
                     -Borrower

_____ (Seal)
                     -Borrower

_____ (Seal)
                     -Borrower

_____ (Seal)
                     -Borrower

_____ (Seal)
                     -Borrower

_____ (Seal)
                     -Borrower

Loan No: 126076731
8480833 (0506)              Page 4 of 4              Form 5603
                                                        6/05

07 0995842

# Exhibit "C"

RECORDING REQUESTED  BY

WHEN RECORDED MAIL TO

**REGIONAL TRUSTEE SERVICES CORPORATION**
616 1st Avenue, Suite 500
Seattle, WA 98104

Trustee's Sale No·    05-FMB-88138

*O90861724*

## *FMB881380153000000*

**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five  business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).  This amount is $21,674.52 as of 12/17/2009, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Pursuant to California Civil Code Section 2923.5, the mortgagee, beneficiary, or authorized agent has contacted the borrower, tried with due diligence to contact the borrower as required by this section, or the borrower has surrendered the property to the mortgagee, trustee, beneficiary, or authorized agent OR the undersigned certifies that the compliance with Civil Code Section

Page 1 of 2                    CA NOD

*3*

2923.5· was made at least thirty (30) days prior to the date of this Notice of Default and Election to Sell Under Deed of Trust.

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure or if your property is in foreclosure for any other reason, contact:

**ONEWEST BANK, FSB**
**C/O REGIONAL SERVICE CORPORATION**
**616 1st Avenue, Suite 500**
**Seattle, WA 98104**
**(206) 340-2550**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

Remember,
## YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN** that REGIONAL SERVICE CORPORATION, is either the duly appointed Trustee, the substitute Trustee or acting as agent for the Beneficiary under a Deed of Trust dated 4/16/2007, executed by JERONIMO GIL AND DENISE GIL HUSBAND AND WIFE AS JOINT TENANTS, as Trustor, to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK, as Beneficiary, recorded 4/25/2007 , as Instrument No. 20070995842, of Official Records in the office of the Recorder of LOS ANGELES County, CALIFORNIA, as more fully described on said deed of trust including one note(s) for the sum of $599,200.00. That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred as follows:

> FAILURE TO PAY INSTALLMENTS OF PRINCIPAL, INTEREST, IMPOUNDS AND LATE CHARGES WHICH BECAME DUE 6/1/2009 TOGETHER WITH ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL, INTEREST, IMPOUNDS, LATE CHARGES, FORECLOSURE FEES AND EXPENSES, ANY ADVANCES WHICH MAY HEREAFTER BE MADE; ALL OBLIGATIONS AND INDEBTEDNESSES AS THEY BECOME DUE; AND ANY INSTALLMENTS ALREADY MADE, THAT AT A LATER DATE PROVE TO BE INVALID.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said Trustee, such Deed of Trust and all the documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: 12/17/2009

Regional Service Corporation, Trustee
By LPS DEFAULT TITLE & CLOSING,
As authorized agent

*menphong*
Page 2 of 2

CA NOD

*4*

JERONIMO GIL

### DECLARATION PURSUANT TO CAL. CIV. CODE SECTION 2923.5(b):

The undersigned mortgagee, beneficiary or authorized agent hereby declares under penalty of perjury, under the laws of the State of California, as follows:

☒   The mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5.  Thirty days or more have elapsed since the borrower was contacted.

☐   The mortgagee, beneficiary or authorized agent has tried with due diligence to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.

☐   The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.5 because:

   ☐   the borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

   ☐   the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

   ☐   the borrower has filed for bankruptcy, and the proceedings have not yet been finalized.

I certify under penalty of perjury under the laws of the State of California that the above is true and correct.

INDYMAC MORTGAGE SERVICING

Date:   11/2/2009                    By:      *Emaly Pina*
                                              *Emily Pearce*

# Exhibit "D"

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

**ONEWEST BANK, FSB**
**888 E WALNUT STREET**
**PASADENA, CA 91101**

Trustee Sale No. 05-FMB-88138

APN#          7527-020-021
Address       22706 DRAILLE DRIVE
              TORRANCE, CA  90505

*0908661724*

"This instrument is being recorded as an
ACCOMMODATION ONLY, with no
Representation as to its effect upon title"

# TRUSTEE'S DEED

The undersigned grantor declares:
1.    The Grantee herein was the foreclosing beneficiary.
2.    The amount of the unpaid debt together with costs was $644,317.72.
3.    The amount paid by the Grantee at the Trustee's Sale was $644,332.72.
4.    The documentary transfer tax is $_____0_____.

**REGIONAL SERVICE CORPORATION**, a California corporation, as the duly appointed Trustee under the Deed of Trust hereinafter described (herein called TRUSTEE), hereby grants and conveys, but without warranty, express or implied, to

Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage
Trust 2007-AR15, Mortgage Pass-Through Certificates, Series 2007-AR15 under the
Pooling and Servicing Agreement dated June 1, 2007

Herein called GRANTEE, all of its right, title and interest in and to that certain property situate in the City of TORRANCE, County of LOS ANGELES, State of CALIFORNIA, described as follows:

ATTACHED HERETO AS EXHIBIT 'A' AND INCORPORATED HEREIN AS THOUGH
FULLY SET FORTH.

TAX PARCEL NO.     7527-020-021

This conveyance is made pursuant to the powers conferred upon TRUSTEE by that certain Deed of Trust executed by JERONIMO GIL AND DENISE GIL HUSBAND AND WIFE AS JOINT TENANTS, as Trustors recorded 4/25/2007 , as Instrument No. 20070995842, of Official Records in the office of the Recorder of LOS ANGELES County, State of CALIFORNIA, and after fulfillment of the conditions as specified in said Deed of Trust authorizing this conveyance. Default occurred as set forth in a Notice of Default and Election to Sell which was filed for record in the office of the Recorder of said County, and such default still existed at the time of sale. All requirements of law regarding the mailing of copies of notices and posting and publication of copies of the Notice of Sale have been complied with.

Page 1 of 3                                                    CA_TD

Said property was sold by said Trustee at public auction on April 9, 2010, at the place named in the Notice of Sale, in the County of LOS ANGELES, CALIFORNIA, in which the property is situated Grantee, being the highest bidder at such sale, became the purchaser of said property and paid therefor to said Trustee the amount bid, in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust.

Date.   4/13/2010

REGIONAL SERVICE CORPORATION, Trustee

By _____
JEAN GREAGOR, AUTHORIZED AGENT

STATE OF WASHINGTON        )
                           ) ss
COUNTY OF KING             )

On 4/13/2010, before me, the undersigned, a Notary Public, personally appeared JEAN GREAGOR, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC

EDWARD S. CHOI
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
08-16-11

CA_TD

# EXHIBIT FOR LEGAL DESCRIPTION
## Trustee's Sale No. 05-FMB-88138

LOT 110 OF TRACT NO. 17986, IN THE CITY OF TORRANCE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 447 PAGES 19, 20 AND 21 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS AND HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET AS GRANTED TO ARCADIA INVESTMENT COMPANY BY DEED RECORDED IN BOOK 38472 PAGE 290, OFFICIAL RECORDS.

"BY A DEED DATED SEPTEMBER 25, 1962, AND RECORDED SEPTEMBER 29, 1962, IN BOOK 39966 PAGE 366, OFFICIAL RECORDS, ARCADIA INVESTMENT COMPANY QUITCLAIMED "ALL ITS RIGHTS IN AND TO SAID TRACT 17986, EXCEPT ALL OIL, GAS AND HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF ENTRY UPON THE SURFACE OF SAID LAND"; WHICH DEED RECITES "THIS DEED IS EXECUTED FOR THE PURPOSE OF QUITCLAIMING AND RELEASING ALL SURFACE RIGHTS TO THE PROPERTY DESCRIBED HEREIN

# Exhibit "E"

Recording Requested By

When recorded, mail to:

**REGIONAL TRUSTEE SERVICES CORPORATION**
616 1st Avenue, Suite 500
Seattle, WA 98104

09056 17 24
Trustee's Sale No: 05-FMB-88138

# *FMB881380172000000*

### SUBSTITUTION OF TRUSTEE

**WHEREAS** JERONIMO GIL AND DENISE GIL HUSBAND AND WIFE AS JOINT TENANTS was the original Trustor, and AMERICAN LAND AND AIRCRAFT TITLE COMPANY was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC  AS NOMINEE FOR INDYMAC BANK, F.S B., A FEDERALLY CHARTERED SAVINGS BANK was the original Beneficiary under that certain Deed of Trust dated 4/16/2007, and recorded on 4/25/2007 under Instrument No. 20070995842,  records of LOS ANGELES County, CALIFORNIA; and **WHEREAS**, Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage Trust 2007-AR15, Mortgage Pass-Through Certificates, Series 2007-AR15 under the Pooling and Servicing Agreement dated June 1, 2007, the undersigned, is the present Beneficiary under said Deed of Trust, and **WHEREAS** the undersigned desires to substitute a new Trustee under said Deed of Trust in the place and stead of said original Trustee thereunder,

**NOW, THEREFORE,** the undersigned hereby substitutes REGIONAL SERVICE CORPORATION, a California corporation, whose address is 616 1st Avenue, Suite 500, Seattle, WA 98104, as Successor Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural

EXHIBIT    C
1

CA Sub

200

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen V. Wilson and the assigned discovery Magistrate Judge is Paul Abrams.

The case number on all documents filed with the Court should read as follows:

## CV11- 528 SVW (PLAx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Summons in a Civil Action (Rev 11/97)

# United States District Court

## Central DISTRICT OF CALIFORNIA

JERONIMO GIL and DENISE GIL,

Plaintiffs. ■

vs

INDYMAC BANK, F.S.B., a Federally
Chartered Savings Bank, original
lender, AMERICAN LAND and
AIRCRAFT TITLE COMPANY, as
original Trustee; MORTGAGE
ELECTRONIC REGISTRATION
SYSTEM, INC., as Nominee for
INDYMAC BANK, F.S.B., (MERS);
DEUTSCHE BANK NATIONAL ■

**SUMMONS IN A CIVIL ACTION**

Case No.

## CV11  0528 SVW PLAx

TO: (Name and Address of Defendant)

YOU ARE HEREBY SUMMONED and required to file with the Clerk of this Court and
serve upon PLAINTIFF'S ATTORNEY

George H. Bye, Esq.
1901 First Avenue, First Floor
San Diego, CA 92101
(619) 233 7502                                                              ■

An answer to the complaint which is herewith served upon you, within _____ days after
service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment
by default will be taken against you for the relief demanded in the complaint.

*Terry Nafisi*

JAN 1 8 2011

|  |  |
|---|---|
| CLERK | DATE |

**CHRISTOPHER POWERS**

By _____ , Deputy Clerk

Summons in a Civil Action

Page 1 of 2

::ODMA\PCDOCS\WORDPERFECT\14443\1 May 5, 1999 (11:34am)

INDYMAC BANK, F.S.B., a Federally
Chartered Savings Bank, original lender,
AMERICAN LAND and AIRCRAFT TITLE
COMPANY, as original Trustee; MORTGAGE
ELECTRONIC REGISTRATION SYSTEM,
INC., as Nominee for INDYMAC BANK, F.S.B.,
(MERS); DEUTSCHE BANK NATIONAL
TRUST COMPANY, as Trustee for the
INDYMAC INDX MORTGAGE TRUST
2007-AR15, Mortgage Pass-through Certificates,
Series 2007-AR-15 Under the Pooling and Servicing
Agreement Dated June 1, 2007 and claiming to be
Successor Beneficiary; REGIONAL TRUSTEE
SERVICES CORPORATION, claiming to be
Substituted Trustee; and DOES 1-10 inclusive,

                        Defendants.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>JERONIMO GIL and DENISE GIL<br><br>Federally Chartered | DEFENDANTS<br>INDYMAC BANK, F.S.B,. a Federally Chartered Savings Bank, original lender;<br>AMERICAN LAND and AIRCRAFT TITLE COMPANY, as original Trustee;<br>MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC, etc., et al. |
|---|---|

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>George H. Bye, Esq.        SBN: 56666<br>1901 First Avenue, First Floor<br>San Diego, CA 92101-2311        (619) 233 7502 | Attorneys (If Known) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:    JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☒ No        ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C Section 1601 et seq., 12 U.S.C. Sections 2601-2607, violations of TILA and RESPA (Truth in Lending / Real Estate Settlement Procedures Act)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☒ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**CV11 0528**

FOR OFFICE USE ONLY:    Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)    ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                                ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                                ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                                ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Indymac Bank, FSB, Los Angeles Co.; Deutsche Bank National Trust Co., Orange County, CA | American Land and Aircraft Title Company, Oklahoma County, OK; Mortgage Electronic Registration System, Inc, Genessee County, MI; Regional Trustee Services Corporation, King County, WA |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

***** **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date 01/12/2011

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |